FILED
2013 Aug-14  PM 04:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DALE'S RESTAURANTS, INC., a corporation, and DALE'S SAUCES, INC., a corporation,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) ) | **Case No. Cv-13-JEO-1000-S** |
| **DALES RESTAURANT - FLORENCE, LLC, a limited liability company, DALES PROPERTIES - FLORENCE, LLC, a limited liability company,** | ) ) ) ) ) ) | |
| **Defendants.** | ) | |

### VERIFIED MOTION FOR PRELIMINARY INJUNCTION AND
### MEMORANDUM OF LAW IN SUPPORT THEREOF

COME NOW Plaintiffs Dale's Restaurants, Inc. ("Dale's Restaurants") and

Dale's Sauces, Inc. ("Dale's Sauces" and, together with Dale's Restaurants,

"Plaintiffs") and, pursuant to Rule 65 of the Federal Rules of Civil Procedure, move

the Court for preliminary injunctive relief against Defendants Dales Restaurants –

Florence, LLC ("DRF") and Dales Properties – Florence, LLC ("DPF" and, together

with DRF, "Defendants"). In support of this Motion, Plaintiffs rely upon their

Complaint and all exhibits attached thereto, as well as the following memorandum of

law.

## I.    INTRODUCTION

Plaintiffs Dale's Restaurants and Dale's Sauces are the owners of several federally registered trademarks containing the term DALE'S for use in connection with restaurant services and sauces, respectively. Defendant DRF formerly licensed Dale's Restaurants' trademarks and purported to terminate its agreements with Dale's Restaurants earlier this year. Despite this purported termination, DRF has made it apparent that it intends to continue using the DALE'S marks (more fully identified below) and has opened and is operating its restaurant as "Dale's Steakhouse." DRF's stated rationale for blatantly infringing upon Dale's Restaurants' Marks is that DRF's owner's cousin, "Dale," has given DRF permission to use his name as the name of DRF's restaurant. Regardless of whether DRF's owner actually has a cousin named Dale, DRF's continued use of DALE'S in the name of its restaurant is likely to cause confusion among the purchasing public as to the association between DRF's goods and services and Dale's Restaurants' goods and services. In fact, given DRF's clear intention to trade off of Dale's Restaurants' longstanding goodwill and the fact that DRF is a former authorized licensee of Dale's Restaurants, consumer confusion is inevitable.

As a result, Plaintiffs seek a preliminary injunction prohibiting Defendants from using the name "Dale's Steakhouse" or any variation or derivation of the term DALE'S. Plaintiffs also seek to prohibit Defendants from, *inter alia*, displaying any

signs or other items bearing the trademarks owned by Dale's Restaurants or Dale's Sauces, advertising their restaurant as the "traditional" Dale's Restaurant, referencing the decades long history of Dale's Restaurant, using any domain names that contain DALE'S or any derivation thereof, destroying, disposing of, or altering menus, tiles, stained glass, and other items which contain the DALE'S marks or which were on the premises of Dale's Restaurant prior to Defendants' purchase of same, and from using Dale's Restaurants' trade secret recipes and confidential information in any manner whatsoever.

As shown herein, Plaintiffs can demonstrate each of the factors necessary for obtaining preliminary injunctive relief and such relief is due to be granted in their favor.

## II.    STATEMENT OF FACTS

Plaintiffs hereby adopt and incorporate by reference, as if fully set forth herein, the facts contained in their Complaint filed on May 24, 2013, (*see* Complaint, ECF No. 1), as well as the exhibits referenced therein. (ECF No. 4.) As further grounds in support of this Motion, Plaintiffs state as follows:

On May 24, 2013, Dale's Restaurants and Dale's Sauces filed this lawsuit, asserting claims against DRF and DPF for, among other things, trademark infringement, unfair competition, and breach of contract. Plaintiffs' claims arise out of and relate to the contractual relationship between Dale's Restaurants and Defendants.

As more fully explained in the Complaint, in November 2012, Defendants purchased the real property associated with "Dale's Restaurant" in Florence, Alabama, and various items of personal property from Tompkins & Campbell, LLC ("T&C"). (Compl., ECF No. 1, ¶¶ 36-40.) Defendants purchased that real and personal property subject to certain agreements between Dale's Restaurants and T&C, including a license agreement. (*Id.* at ¶¶ 22-35.)

On November 28, 2012, Dale's Restaurants, T&C, Defendants, and Defendants' owners entered into several agreements. (*Id.* at ¶¶ 41-57.) Those agreements effectively substituted Defendants in place of T&C as licensees in the license agreement that existed between T&C and Dale's Restaurants. (*Id.* at ¶¶ 44-45.) The parties also executed a Master Agreement, an amendment to the existing license agreement, a Domain Name Lease Agreement, and a Confidentiality Agreement. (*Id.* at ¶¶ 41-57.)

Pursuant to the License Agreement, as amended, Dale's Restaurants licensed its trademarks,[1] domain names, and other intellectual property (hereinafter "Dale's Restaurants' Intellectual Property") to Defendants for their use in connection with the operation of the restaurant in Florence, Alabama. The restaurant, "Dale's Restaurant,"

---

[1] Dale's Restaurants' trademarks, hereinafter "Dale's Restaurants' Marks," include, *inter alia*, DALE'S (stylized and in standard characters), DALE'S RESTAURANT, and other variations thereof, and design marks consisting of a bull or bulls, used separately and together with DALE'S and/or DALE'S RESTAURANT. (*See* Compl., ECF No. 1, at ¶¶ 15-16.)

4

has been in business in the same location since 1962. Dale's Restaurant has always been a steakhouse, featuring menu items such as Dale's one-pound "El Dropo" tenderloin. (*See* Garner, Ray, *Two-decade old tradition continues at Florence restaurant*, The Huntsville Times, March 17, 1994, attached hereto as Exhibit "A.")

Shortly after signing the agreements with Dale's Restaurants, Defendants and their business partners closed the restaurant for renovations. Initially, Defendants intended to reopen the restaurant on March 15, 2013, but the reopening was delayed until July 2013.

Almost immediately after entering into the agreements with Dale's Restaurants, Defendants began taking actions in contravention of those agreements. For instance, as set forth more fully in Plaintiffs' Complaint, DRF registered the website dalesflorence.com and began advertising the restaurant on that website as "Dale's Steakhouse," despite the fact that the parties' agreements prohibited DRF from using or adopting Dale's Restaurants' Marks, or any variations thereof, without Dale's Restaurants' express written permission. When Dale's Restaurants learned of DRF's use of dalesflorence.com and DALE'S STEAKHOUSE, Dale's Restaurants did not deny DRF the right to use that domain name and trademark, but merely reminded DRF that the parties' agreements contained certain contractual obligations that DRF needed to abide by. Then, consistent with its contractual right to own derivative marks

developed by DRF, Dale's Restaurants filed federal trademark applications for DALE'S STEAKHOUSE. (*See* ECF No. 4-1 at pp. 12-37.)

Later, DRF sought permission to engage in other activities that were prohibited and/or not contemplated by the parties' agreements, including selling Dale's Steak Seasoning (manufactured and sold by Dale's Sauces) and other Dale's promotional items in the restaurant upon its reopening. Those items included consumer goods, such as t-shirts and hats, bearing Dale's Restaurants and Dale's Sauces marks.

In an effort to accommodate DRF's requests, the Plaintiffs prepared a new agreement outlining terms on which DRF could sell Dale's Seasoning and other promotional items in the restaurant and an amendment to the domain name license agreement allowing DRF to utilize additional domain names. In response, Al Thomas, acting on behalf of DRF, stated that he and his partners "decided that we cannot sign the agreements and/or amendments that [Dale's Restaurants] sent. We are taking the necessary steps to make sure that we do not impede or infringe on the Dales logo or registered trademark in the future." (*See* Compl., ECF No. 1, at Ex. 8.) Dale's Restaurants sought to follow up with Mr. Thomas, requesting a conference call to discuss the parties' business relationship. In response, Mr. Thomas simply stated: "We have decided to discontinue use of the Dales mark." (*See id.* at Ex. 10.)

Believing that Mr. Thomas and DRF had expressed their intent to terminate the agreements between them and Dale's Restaurants, Dale's Restaurants, through its

counsel, sent Mr. Thomas a letter outlining DRF's obligations in conjunction with the termination, including DRF's obligation to immediately cease use of Dale's Restaurants' trademarks and other intellectual property. (*See id.* at Ex. 11.)

In particular, Dale's Restaurants reminded DRF of its contractual obligation not to adopt or use any trademarks that generate a likelihood of confusion with the trademarks owned by Dale's Restaurants, and that DRF can no longer produce, use or sell Dale's Seasoning, Dale's Steak Seasoning (including the variation produced in the restaurant), Dale's salad dressing, Dale's apple turnovers, or any other items produced from or based on Dale's Restaurants' trade secret recipes.

In response, Mr. Thomas stated that the restaurant was now "Dales Steakhouse named after my cousin Dale. We own Dalessteakhouse.net and Dalesflorence.com and are allowed to own Dalesanythingwewant.com at any time as long as we register the name first…[M]y cousin Dale said I could use his name for our steakhouse." (*See id.* at Ex. 12.)

Mr. Thomas also stated that DRF intended to remove the DALE'S RESTAURANT sign and replace it with "our new Dales logo." As to a piece of stained glass which bears Dale's Restaurants' Marks and which Dale's Restaurants requested to purchase from DRF in accordance with the parties' agreements, Mr. Thomas stated: "The stained glass in the lobby has a different Dales font that bears no

resemblance to the Dales Seasoning Mark and will remain in the lobby as a historical item." (*Id.*)

Mr. Thomas also repeatedly indicated his intent to sell and/or use Dale's Steak Seasoning in DRF's restaurant:

> "We will offer Dales Seasoning as well as Heinz Ketchup, Kraft Mayo and French's mustard at Dales…"

> "[W]e will serve items made with Dales seasoning…"

> "[W]e will buy Dales Seasoning from a wholesale supplier and use as needed…"

> "We can sell Dales Seasoning at our restaurant just like Publix does next door."

> "We can take the Dales Recipe and add one teaspoon of Lea and Perrins to it and it becomes Al's Seasoning."

> "We can tell our guests that we use Dales Seasoning…"

(*Id.*)

Finally, Mr. Thomas stated: "I can assure you that there will be no calculable monetary damages as a result of us using my cousin's name Dale or serving the Dales Seasoning at our restaurant." (*Id.*)

On May 10, 2013, Dale's Restaurants sent another letter to DRF, seeking confirmation from DRF that DRF had terminated the parties' agreements or, alternatively, that DRF intended to remain a licensee and use its new variations of the DALE'S Marks (i.e. DALE'S STEAKHOUSE, dalesflorence.com, etc.). (Compl., ECF No. 1, at Ex. 13.) Mr. Thomas responded to this letter, stating:

8

We have spoken with the owners of Dales Steakhouse in Dickson Tennessee and they have agreed to let us use the name Dales Steakhouse. So has my cousin Dale. We are not going to use the service mark from Dales seasonings or the former Dales Restaurant that was located in Florence. Our logo, may, however be somewhat similar to the Dales Restaurant in Mississippi.

(*See id.* at Ex. 14.)

Through the parties' correspondence, it has become evident that DRF does not intend to comply with the agreements entered into between the parties on November 28, 2012.  Although Dale's Restaurants believes it is reasonable to interpret DRF's correspondence as notice of termination of the parties' agreements, DRF has refused to directly state an intention to terminate. Further, it has indicated clear intent to continue use of Dale's Restaurants Intellectual Property, and is even moving forward with its use of confusingly similar marks that will cause the consuming public to associate DRF's new restaurant with the original Dale's Restaurant and with Dale's Sauces' products.

For example, as of May 15, 2013, DRF had modified the website located at www.dalessteakhouse.net to reflect the DALE'S STEAKHOUSE name. (*See id.* at Ex. 15.)[2] The website contained a DALE'S logo that was strikingly similar to one of Dale's Restaurants' Marks and the "new" logo stated that the restaurant was "Established 1962" (the year the original restaurant was established), despite the fact

---

[2] Internet traffic from dalesflorence.com is redirected to dalessteahouse.net. *See* dalesflorence.com (last accessed June 25, 2013).

that, as of that time, DRF's restaurant had never been open for operation. (*Id.*) The webpage also contained a photograph of the DALE'S RESTAURANT signage, including two stylized bulls. (*Id.*) And, the text on the webpage referenced the history of the restaurant, which is the history of DALE'S RESTAURANT, *not* Dale's Steakhouse. (*Id.*)

Since May 15, 2013, DRF has updated the website located at dalesflorence.com. (*See* Screenshots of Content located at dalesflorence.com, attached hereto as Exhibit "B.") Although DRF has made some minor changes to the DALE'S STEAKHOUSE logo, such as changing the words "Established 1962" to "Great Beef, No Bull," the logo still bears a striking resemblance to Dale's Restaurants' Marks. DRF also has added this statement to its website: "Dale's Restaurant has been purchased by Al Thomas and Sam Sanchez from Nashville, Tennessee…The new restaurant will be called Dales Steakhouse and will not in any way be associated with Dales Restaurant or Dales Seasoning."

DRF also has replaced the old "Dale's Restaurant" sign in front of the building with a new sign that reads "Dale's Steakhouse." (*See* Image of Dale's Steakhouse Sign, attached hereto as Exhibit "C.") The new sign is still extremely similar to the old sign, which also had a black background and white lettering.

On June 2, 2013, a news article indicated that "Dale's, a landmark steak house near the Tennessee River, is being remodeled and should reopen in mid-July, said Al

10

Thomas, one of the business partners who bought the restaurant…The Dale's menu is being expanded, but will retain the traditional Dale's-style sauce as well as a dry seasoning, [Thomas] said." (*See* Palmer, Robert, *New Restaurants, Retail Opening Soon*, June 2, 2013, attached hereto as Exhibit "D.") The author's use of "landmark" and "traditional" indicates his mistaken belief that the new restaurant is affiliated with the Dale's Restaurant that has operated in the same location for more than fifty years.

On July 8, 2013, DRF had a limited opening of "Dale's Steakhouse" for "VIP" customers. As expected, the restaurant still advertises and/or relies upon the history associated with Dale's Restaurants' business that operated in the same location for so many years. For instance, directly inside the entrance, DRF still displays the stained glass "Dale's" sign bearing the year "1962." DRF is also prominently using the name DALE'S on its salad bar and its business cards. During the limited opening, DRF's owners confirmed that the "grand opening" would take place on Monday, July 15, 2013.

"Dale's Steakhouse" opened in July and, since then, it has become apparent that consumers are confused as to the affiliation between the current restaurant and the restaurant formerly operated using Dale's Restaurants' intellectual property. For instance, numerous posts on Dale's Steakhouse's Facebook page indicate that patrons believe Dale's Steakhouse is affiliated with Dale's Restaurants. (*See* Facebook Posts, attached hereto as Exhibit "E," at E-1 ("Remember when there was a Dale's Steak

House in Huntsville?"), E-2 (expressing happiness that "Dale's has returned to be the fine restaurant it was many years ago!"; reminiscing about dining at "Dales" in 1969); E-3 (noting long history of Dale's); E-5 (expressing pride to see the restaurant "returning to its former glory"). The Defendants have not alleviated the confusion but, instead have perpetuated it by repeatedly referencing the "history" and "tradition" of "Dale's." (*See id.* at E-2 (stating that Dale's Steakhouse is "glad to carry on the tradition."); E-4 (noting the new menu "but the same charm as the Dale's for the past 50 years."); E-6 (noting celebration of "our 50th anniversary here in the Shoals.").)

Dale's Steakhouse also still serves the "El Dropo Tenderloin." (*See* Dale's Steakhouse Menu, attached hereto as Exhibit "F.") The "El Dropo Tenderloin" is a distinctly identified menu item that was formerly served in Dale's Restaurant. (*See* Ex. A).

## I.   LEGAL ARGUMENT

### A.   <u>Standards For Granting Preliminary Injunctive Relief.</u>

The purpose of a preliminary injunction is to preserve the relative positions of the parties until a trial on the merits can be held. *U.S. v. Lambert*, 695 F.2d 536 (11th Cir. 1983).  Because of the danger inherent in a trademark owner losing control of its trademarks pending a full trial on the merits, "trademark actions 'are common venues for the issuance of preliminary injunctions[.]'" *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998) (quoting *Foxworthy v. Custom Tees, Inc.*, 879 F.

Supp. 1200, 1219 (N.D. Ga. 1995)).

Preliminary injunctive relief is due to be granted when the movant has established: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Siebert v. Allen*, 506 F.3d 1047, 1049 (11th Cir. 2007).

**B.    Plaintiffs Are Likely To Succeed On The Merits Of Their Claims Against Defendants.**

Plaintiffs have asserted claims for, *inter alia*, breach of contract and violations of the Lanham Act and Alabama common law, including trademark infringement and unfair competition.

**1.    Defendants' Lanham Act Violations.**

Defendants have opened a restaurant named Dale's Steakhouse in the exact same location where Dale's Restaurant has operated for years using Dale's Restaurants' Marks. Defendants are using signage that strongly resembles the signage used by Dale's Restaurant (i.e. white text on a black background). According to Al Thomas, Defendants are serving entrees "traditionally" served at Dale's and intend to sell and use Dale's Steak Seasoning in the restaurant. In fact, the Dale's Steakhouse menu demonstrates that Defendants are using the "Dale's" prefix for certain menu items, such as "Dale's Bread Sticks" and "Dale's Famous Salad Bar." (*See* Ex. F.)

Also, Defendants still serve the "El Dropo Tenderloin," a menu item that was distinct to Dale's Restaurant. (*Id.*) As demonstrated by posts on the Dale's Steakhouse Facebook page, the Defendants' actions have caused confusion among the relevant purchasing public as to the source of the goods and services being provided at Dale's Steakhouse and, as a result, constitute trademark infringement and unfair competition under the Lanham Act. Thus, Defendants' conduct must be immediately enjoined.

The Lanham Act provides a civil cause of action for trademark infringement of federally registered marks. 15 U.S.C. § 1114(a) provides, in pertinent part:

> (1) Any person who shall, without the consent of the registrant--
>
>> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; [] shall be liable in a civil action by the registrant[.]

The Lanham Act further provides a civil cause of action for unfair competition. 15 U.S.C. § 1125(a) provides, in pertinent part:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Federal Trade mark infringement, 15 U.S.C. § 1114, and federal unfair competition, 15 U.S.C. §1125(a)(1)(A), are assessed under similar standards. *See Dunkin' Donuts Franchised Restaurants LLC v. D & D Donuts, Inc.*, 566 F. Supp. 2d 1350, 1360 (M.D. Fla. 2008) (finding plaintiffs met their burden of establishing likelihood of success on infringement and unfair competition claims where defendants conduct created a "certainty of confusion," noting that, "although unfair competition is a broader claim than infringement, it also 'calls on the plaintiff to show confusing similarity'") (quoting *Freedom Sav. & Loan Ass'n v. Way,* 757 F.2d 1176, 1186 (11th Cir. 1985)). *See also Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1026 n.14 (11th Cir. 1990) ("[A]n unfair competition claim based only upon alleged trademark infringement is practically identical to an infringement claim.").

Further, the elements of these statutory claims and the Alabama common law claims for unfair competition and trademark infringement alleged by Plaintiffs are the same. *Choice Hotels Int'l, Inc. v. Kaushik*, 147 F. Supp. 2d 1242, 1256-57 (M.D. Ala. 2000) aff'd sub nom. *Choice Hotels Int'l v. Kaushik*, 260 F.3d 627 (11th Cir. 2001) (citing *Arthur Young, Inc. v. Arthur Young & Co.,* 579 F. Supp. 384, 389 (N.D. Ala. 1983)). Accordingly, if the Court finds that Plaintiffs have demonstrated a likelihood

15

of success on the merits of their federal trademark infringement claim, it is proper for the Court to find that Plaintiffs also have demonstrated a likelihood of success on their common law trademark infringement and unfair competition (federal and common law) claims. *See Tally-Ho, Inc.*, 889 F.2d 1018, 1026 n.14 (declining to address whether plaintiff was entitled to injunctive relief on unfair competition claim since court determined that it was entitled to injunction on infringement claim).

"To establish a prima facie case in an ordinary trademark infringement suit, a plaintiff need only demonstrate '(1) that it has trademark rights in the mark or name at issue ... and (2) that the defendant adopted a mark or name that was the same, or confusingly similar to, the plaintiff's mark, such that there was a likelihood of confusion for consumers as to the proper origin of the goods [or services] created by the defendant's use of the ... name....'" *Ferrellgas Partners, L.P. v. Barrow*, 143 Fed. App'x 180, 186 (11th Cir. 2005) (quoting *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1512 (11th Cir. 1984)).

Dale's Restaurants' federal trademark registrations, (*see* Compl., ECF No. 1, ¶ 16), are prima facie evidence of the validity of the registered marks, of Dale's Restaurants' registration of the marks, of Dale's Restaurants' ownership of the marks, and of Dale's Restaurants' exclusive right to use the registered marks in commerce in connection with restaurant services. *See* 11 U.S.C. § 1115(a); *Dunkin' Donuts Franchised Rests. LLC*, 566 F. Supp. 2d 1350, 1360 (citing *Dieter v. B & H Indus. of*

16

*Sw. Fla., Inc.*, 880 F.2d 322, 326 (11th Cir. 1989)) (noting that the validity of trademarks registered in compliance with the Lanham Act is "conclusively presumed"); *TracFone Wireless, Inc. v. Cabrera*, 883 F. Supp. 2d 1220, 1224 (S.D. Fla. 2012) (citing *Coach House Rest., Inc. v. Coach & Six Rests., Inc.*, 934 F.2d 1551, 1562 (11th Cir. 1991); *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1184-85 (5th Cir. 1980)) ("[T]he Eleventh Circuit strongly presumes registered marks to be valid."). Therefore, Dale's Restaurants has established that it owns and has the exclusive right to use DALE'S and DALE'S RESTAURANT in connection with the provision of restaurant services and has satisfied the first element of a trademark infringement claim.[3]

DRF's adoption and use of the name DALE'S STEAKHOUSE creates a likelihood of confusion as to the proper origin of DRF's restaurant services. In determining the likelihood of confusion between two marks, courts analyze the following seven factors: "(1) type of mark, (2) similarity of mark, (3) similarity of the products the marks represent, (4) similarity of the parties' retail outlets and customers, (5) similarity of advertising media used, (6) defendant's intent and (7) actual confusion." *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 122 F.3d

---

[3] Similarly, Dale's Sauces has established its exclusive ownership and right to use the DALE'S marks with respect to sauces.

1379, 1382 (11th Cir. 1997) (citing *Dieter*, 880 F.2d 322, 326; *Way*, 757 F.2d 1176,

1182), cert. denied, 474 U.S. 845 (1985).

As an initial matter, the Eleventh Circuit and courts within the Eleventh Circuit

have repeatedly held that a finding of likelihood of confusion and trademark

infringement is proper where a terminated licensee continues to use the licensor's

trademarks after the trademark license has been terminated. *See, e.g.*, *Prof'l Golfers*

*Ass'n of Am., Inc. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 670 (5th Cir. 1975)

(citation omitted) ("A former licensee cannot mislead the public into believing that its

affiliation continues once the licensing arrangement has ceased. For once the contract

ends, a licensee's right to the mark ends, and any subsequent use constitutes

infringement."); *Burger King Corp. v. Mason,* 710 F.2d 1480, 1492 (11th Cir. 1983)

("Common sense compels the conclusion that a strong risk of consumer confusion

arises when a terminated [licensee] continues to use the former [licensor's]

trademarks."); *Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1516–17 (11th Cir.

1990) (finding that a former licensee's use of the name "H.J. Inns" was an

impermissible colorable imitation of the Howard Johnson trade and service marks and

was likely to confuse the public); *Am. Farm Bureau Fed'n v. Ala. Farmers Fed'n*, 935

F. Supp. 1533, 1546-7 (M.D. Ala. 1996) (quoting McCarthy on Trademarks, §

25.07[1]) ("Former licensees pose a particularly troublesome source of confusion []:

"[a] licensee who once had authorization becomes associated in the public mind with

18

the licensor ..."); *Burger King Corp. v. E-Z Eating 8th Corp.*, 2008 WL 384554, at *1 (S.D. Fla. Feb. 11, 2008) (citations omitted) ("Many courts have held that continued trademark use by one whose trademark license has been cancelled satisfies the likelihood of confusion test and constitutes trademark infringement."); *In re Gainesville P-H Props., Inc.*, 77 B.R. 285, 294 (Bkrtcy. M.D. Fla. 1987) (citations omitted) ("Continued trademark use by one whose trademark license ha[s] been cancelled satisfies the likelihood of confusion test and constitutes trademark infringement.").

DRF is a former licensee of Dale's Restaurant. As such, DRF's continued use of Dale's Restaurants' Marks is "particularly troublesome," as the consuming public will continue to believe that the goods and services offered by the restaurant are the same goods and services that have been offered for the last fifty years. Additionally, DRF's sale or use of Dale's Steak Seasoning in DRF's restaurant also is likely to result in confusion as to the affiliation between Plaintiffs and DRF unless DRF is ordered to disclaim any affiliation in a clear and conspicuous manner.

Furthermore, although DRF's status as a former licensee is sufficient to establish likelihood of confusion, the majority of the confusion factors weighs in favor of a finding of likelihood of confusion in this case.

### (a)   *Type of Mark*

Trademarks and service marks can be categorized along a spectrum from "generic" to "arbitrary." *Jellibeans, Inc. v. Skating Clubs of Ga., Inc.*, 716 F.2d 833, 841 n.18 (11th Cir. 1983). Marks that consist primarily of a name or surname are considered "descriptive." *See Tana v. Dantanna's*, 611 F.3d 767, 776 (11th Cir. 2010). "A descriptive mark with secondary meaning is a relatively strong mark." *Dieter*, 880 F.2d 322, 329.

Marks have acquired secondary meaning "when the primary significance of the term in the minds of the [consuming] public is not the product but the producer." *Welding Servs., Inc. v. Forman Welding Servs., Inc.,* 509 F.3d at 1358 (quoting *Am. Television & Commc'ns Corp. v. Am. Commc'ns & Television, Inc.,* 810 F.2d 1546, 1549 (11th Cir. 1987)) (internal quotation marks omitted) (alteration in original). *See also* MCCARTHY § 15:5 ("The prime element of secondary meaning is a mental association in buyers' minds between the alleged mark and a single source of the product.").

Because Dale's Restaurants owns several federally registered trademarks, Dale's Restaurants enjoys a presumption that, to the extent necessary given the type of mark, those trademarks have acquired secondary meaning. *See Bogart, LLC v. Ashley Furniture Indus., Inc.*, 2012 WL 3745833, at *7 (M.D. Ga. Aug. 28, 2012) (quoting *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir. 1986))

(noting existence of presumption of secondary meaning for federally registered trademarks).

Even without this presumption, Dale's Restaurants can establish that its marks have secondary meaning in the relevant market (i.e. Florence, Alabama). "The factors to consider in determining whether a trademark has acquired secondary meaning are: "(1) the length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's product or business; and (4) the extent to which the public actually identifies the name with the plaintiff's product or venture." *Singleton*, 743 F.2d 1508, 1513. Further, "evidence that defendant knowingly imitated or copied plaintiff's symbol…is also probative of the existence of secondary meaning." MCCARTHY § 15:38.

Dale's Restaurants, or its predecessors, either directly or through their authorized licensees, have used the DALE'S marks continuously in Florence, Alabama since 1962. News articles in the Florence area newspapers refer to Dale's Restaurant as "iconic" and as a "landmark," which is evidence that the public has come to associate Dale's Restaurant with the products and services offered there. Finally, and importantly, DRF has knowingly and intentionally copied Dale's Restaurants' Marks in an effort to trade on the goodwill generated by Dale's Restaurants over the years. Dale's Restaurants' long period of use, combined with

favorable press and DRF's intent to copy Dale's Restaurants' Marks, are sufficient to evidence Dale's Restaurants' Marks' acquisition of secondary meaning in the Florence, Alabama area.

As descriptive marks that have acquired secondary meaning, Dale's Restaurants' Marks are "strong" marks and are entitled to a high level of protection. Thus, this factor weighs in Plaintiffs' favor.

### (b)  *Similarity of the Mark*

"In evaluating the similarity of marks, [courts] must consider the overall impression created by the marks, including a comparison of the appearance, sound and meaning of the marks, as well as the manner in which they are displayed." *E. Remy Martin & Co., S.A. v. Shaw-Ross Intern. Imports, Inc.*, 756 F.2d 1525, 1531 (11th Cir. 1985). The dominant portion of Defendants' mark, DALE'S, is identical in appearance, sound and meaning to the dominant portion of Dale's Restaurants' Marks. This factor weighs in Plaintiffs' favor.

### (c)  *Similarity of Goods and Services and of Retail Outlets and Purchasers*

The goods and services offered under the DALE'S STEAKHOUSE marks are identical to those offered under Dale's Restaurants' Marks. Dale's Steakhouse is a restaurant similar to the one that previously used Dale's Restaurants' Marks. In fact, Dale's Steakhouse intends to sell "traditional" Dale's menu items upon its reopening. Additionally, Dale's Steakhouse is in the exact same location as the previous Dale's

Restaurant, so the retail outlets and purchasers are exactly the same. Therefore, these two factors weigh in Plaintiffs' favor.

### (d)   *Defendants' Intent*

DRF's infringement is willful, and DRF clearly intends to trade on Dale's Restaurants' goodwill. First, there can be no doubt that DRF is aware of the existence of Dale's Restaurants' Marks -- DRF formerly licensed those marks. And, DRF is aware of Dale's Restaurants' claim of ownership of those marks. DRF also is aware that Dale's Restaurants' Marks have value, since DRF expressed its intent to leave a piece of stained glass bearing the DALE'S mark in the restaurant for "historical purposes." Yet DRF has chosen to ignore Dale's Restaurants' valid, enforceable rights and the value of its trademarks, allegedly because DRF's owner has a cousin named Dale. DRF's cavalier attitude in the face of Dale's Restaurants' legitimate demands and its blatant disregard for Dale's Restaurants' trademark rights demonstrate that DRF's actions are intentional. As a result, this factor weighs in Plaintiffs' favor.

### (e)   *Actual Confusion*

A plaintiff need not show "actual confusion" in order to prevail on a trademark infringement claim -- the issue is one of "likely," not "actual," confusion. *E. Remy Martin & Co., S.A.*, 756 F.2d 1525, 1531. In this particular case, the Plaintiffs have provided both actual and circumstantial evidence of consumer confusion. For instance, the June 2, 2013 news article, mentioned above, states that a "landmark city

steak house is almost ready to reopen" and that Dale's "will retain the traditional Dale's-style sauce…" These statements indicate that the article's author was under the impression that the new Dale's Steakhouse is still affiliated with Dale's Restaurants. Further, the various posts on Dale's Steakhouse's Facebook page indicate that consumers believe the restaurant is the same one they have been patronizing for years, (*see* Ex. E), and that Dale's Steakhouse is affiliated with the historic Dale's Restaurant. (*See,         e.g.,*         Ex.         E-1, E-2.)

In sum, Plaintiffs have demonstrated their ownership and exclusive right to use several valid trademarks and that, if Defendants are allowed to open and operate "Dale's Steakhouse" or to sell and use Dale's Steak Seasoning without a disclaimer, the relevant purchasing public will be confused into believing that Defendants are affiliated with Plaintiffs. Thus, Plaintiffs have demonstrated a likelihood of success on their trademark infringement and unfair competition claims and are entitled to injunctive relief in their favor.

### 2.    Breach of Contract.

To prove a breach of contract claim, Plaintiffs must prove the existence of a valid, enforceable contract, their own performance under the contract, the Defendants' breach, and damages as a result of the breach. Dale's Restaurants and the Defendants are parties to several contracts -- the Master Agreement, the Confidentiality

Agreement, the First Amendment to License Agreement, and the Domain Name Lease Agreement. Dale's Restaurants has performed its obligations under each of these agreements. Defendants, on the other hand, have not.

For instance, the First Amendment requires DRF to cease displaying or using Dale's Restaurants' Marks and other intellectual property upon termination or expiration of the agreement, and to offer to sell signage and other materials bearing those marks to Dale's Restaurants. However, DRF has purported to terminate the agreements between it and Dale's Restaurants, yet it continues to use the DALE'S name in connection with DRF's restaurant operations. Further, DRF has refused to sell to Dale's Restaurants a valuable piece of memorabilia, a piece of stained glass bearing the DALE'S mark, even though Dale's Restaurants has sought to purchase it per the parties' agreements.

Even if DRF contends it has not terminated the License Agreement or the First Amendment (which seems unlikely given the statement on its website that it is not associated with Dale's Restaurants), DRF is in breach of those agreements. For instance, DRF is using permutations or variations of Dale's Restaurants' Marks, such as DALE'S STEAKHOUSE GREAT BEEF, NO BULL, without the prior written consent of Dale's Restaurants.

DRF's actions in breach of its agreements with Dale's Restaurants have resulted in confusion in the marketplace and threaten to harm the substantial goodwill

generated by Dale's Restaurants over the course of many years. As such, Dale's Restaurants has proven a likelihood of success on the merits of its contract claim, and the Court should enter an injunction requiring DRF to comply with its contractual obligations.

## C.    Plaintiffs Will Be Irreparably Harmed Absent A Preliminary Injunction.

Where a plaintiff establishes a likelihood of success on the merits of its trademark infringement claim, a presumption of irreparable harm to the plaintiff arises. *See, e.g.*, *Tally-Ho, Inc.*, 889 F.2d 1018, 1029 ("It is generally recognized in trademark infringement cases that (1) there is no[] adequate remedy at law to redress trademark infringement and (2) infringement by its nature causes irreparable harm.") (citation omitted); *Robertson*, 147 F.3d 1301, 1310 (citation omitted) ("When a plaintiff makes a *prima facie* showing of trademark infringement, irreparable harm is ordinarily presumed."). *But see N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211 (11th Cir. 2008) (discussing, without deciding, whether presumption of irreparable harm is still permissible in the trademark context in light of *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006)).

Since Plaintiffs have demonstrated a likelihood of success on the merits of their trademark infringement claim, the Court may presume that they will be irreparably harmed absent injunctive relief. Even if the Court finds that Plaintiffs are not entitled

to a presumption of irreparable harm, it still exists in this case. As to irreparable harm in the trademark context, the Eleventh Circuit has stated:

> Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill. Irreparable injury can also be based upon the possibility of confusion…The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods. Even if the infringer's products are of high quality, the plaintiff can properly insist that its reputation should not be imperiled by the acts of another. A plaintiff need not show that the infringer acted in such a way as to damage the reputation of the plaintiff. It is the loss of control of one's reputation by the adoption of a confusingly similar mark that supplies the substantial threat of irreparable harm.

*Ferrellgas Partners, L.P. v. Barrow*, 143 Fed. App'x 180, 190-91 (11th Cir. 2005) (citations omitted).

If the Court does not grant the requested injunction, Plaintiffs will lose control of their trademarks during the pendency of this lawsuit, their reputation will be "imperiled" by the acts of Defendants, and the Plaintiffs will lose the ability to control the nature and quality of the goods and services sold using their trademarks. The risk of this harm is imminent; Defendants recently reopened Dale's Steakhouse. Therefore, Plaintiffs have demonstrated that they are subject to immediate and irreparable injury if an injunction does not issue.

      **D.**    <u>**The Balance Of Harms Tips In Plaintiffs' Favor.**</u>

"In deciding whether injunctive relief is appropriate, [] a trial court must…balance the hardships to the respective parties. The inquiry is whether the

probable loss of consumer goodwill outweighs the cost of delay to the defendant who will be unable to sell the product using the trademark until a decision is reached on the merits." *Dunkin' Donuts Franchised Rests. LLC*, 2007 WL 2209245 (M.D. Fla. July 30, 2007) (citations omitted).

The balance of harms frequently weighs in favor of injunctive relief in trademark infringement cases, primarily because of the harm suffered by a trademark owner when the owner is threatened with losing control of its trademark during the pendency of the litigation. *See id.* at *5 (balance of harms favored plaintiff where plaintiff was faced with "losing all control" over its trademark and suffering "immeasurable losses" to its goodwill, even though the defendant was faced with laying off employees and "substantial financial difficulties"). *See also Sylvan Learning Inc. v. Learning Solutions, Inc.*, 795 F. Supp. 2d 1284, 1303 (S.D. Ala. 2011) (balance of harms weighed in trademark owner's favor where any harm allegedly suffered by former licensee would be "outweighed by [licensor's] loss of goodwill and of the control of its marks should an injunction not issue").

If Defendants are permitted to continue their infringing actions unabated, Plaintiffs will lose control of their trademarks, their reputation, and their goodwill. If the Court grants Plaintiffs' requested injunction, the only harm Defendants will suffer is having to change their restaurant's name and to replace signage, menus, and other items bearing the DALE'S name. However, this harm is self-inflicted -- it was the

Defendants' decision to terminate the agreements with Plaintiffs, and Defendants cannot now complain that they cannot use Dale's Restaurants' Marks. On balance, the risk of harm to Plaintiffs is greater than any harm Defendants could suffer and, therefore, this factor weighs in Plaintiffs' favor.

### E.   Issuing the Injunction Will Serve The Public Interest

"[T]he public interest is served by preventing consumer confusion in the marketplace." *Davidoff & CIE, S.A. v. PLD Int'l Corp.,* 263 F.3d 1297, 1304 (11th Cir. 2001) (citing *SunAmerica Corp. v. Sun Life Assurance Co. of Canada,* 77 F.3d 1325, 1334 (11th Cir. 1996)).  *See also Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d  800, 807 (3rd Cir. 1998) (holding that Defendant's use of the Roy Rogers mark was likely to create confusion, and that this finding mandated a finding that the public interest would be damaged if Defendant were permitted to continue using the mark). Therefore, this factor weighs in favor of injunctive relief.

### III.   RELIEF REQUESTED

Because the Plaintiffs have established that they are entitled to preliminary injunctive relief, Plaintiffs request the Court to enter an order directing Defendants to:

1.    Cease using any and all of Dale's Restaurants' Marks in any form, including but not limited to:

    a.   Cover or remove all signs, plaques, tiles, stained glass, or other indicia bearing the Dale's Restaurants' Marks or representing the previous Dale's Restaurant from the property and the building;

    b.   Cease use of any menus, dishes, glassware, serving pieces or other items bearing the Dale's Restaurants' Marks and/or featuring menu items

produced using the Trade Secrets or Intellectual Property or named in such a way as to indicate they are traditional "Dale's Restaurant" items;

   c.  Cease all advertising, whether in print, audio, video, electronic or other formats featuring the restaurant and using the Dale's name, the Dale's Restaurants' Marks or Intellectual Property or otherwise referencing the history of the "Dale's Restaurant";

   d.  Disable all domain name accounts for domains which have the Dale's name or any of the Dale's Restaurants' Marks in the domain name and convert these domain accounts to parked pages (this includes, but is not limited to:

        www.dalesrestaurant.com

        www.dalessteakhouse.com

        www.dalessteakhouse.net

        www.dalesflorence.com

        www.dalesrestaurants.com

        www.dalesrestaurants.net

        www.dalesrestaurant.org

        www.dalessteakhouse.com

        www.dalesmarinade.com

   e.   Revise or disable all websites (regardless of the domain name at which they are located) which feature Dale's, Dale's Restaurant, Dale's Steakhouse or any of the other Dale's Marks or Intellectual Property, including but not limited to the Dale's Steakhouse Facebook page and the websites located at dalessteakhouse.net and dalesflorence.com;

   f.   Cease use of all letterhead, business cards, envelopes, post cards, or other stationary items using the "Dale's" name, any of the Dale's Marks, or other indicia of the Dale's Restaurant.

2.   Store and preserve in their current condition all items that are covered, removed, revised or disabled as required by 1, including, but not limited to,

preserving copies of all archived and current versions of the websites located at each of the domain names in question.

3.   Cease use of all menu items produced using the Trade Secret recipes or identified using the Dale's Restaurants' Marks.

4.   Cease use of all Dale's Training Manuals and Dale's Operations Manuals.

5.   Comply with all requirements of the Confidentiality Agreement.

6.   Maintain all business records of Dale's Restaurants, Inc. and/or Tompkins and Campbell that are currently in Defendants' possession.

7.   Maintain a listing of all vendors and suppliers from whom the restaurant has purchased supplies in the past.

8.   Include prominent disclaimers on all websites, at the restaurant and in any advertising indicating that the new restaurant is not in any way related to or affiliated with the previous Dale's Restaurant.

## IV.   CONCLUSION

WHEREFORE, based on the foregoing, Plaintiffs Dale's Restaurants, Inc. and Dale's Sauces, Inc. respectfully request the Court to grant preliminary injunctive relief in their favor and to enter an order consistent with the relief requested herein.

Respectfully Submitted,


/s Joseph W. Letzer
Joseph W. Letzer
India E. Vincent
Elizabeth B. Shirley
Ellen T. Mathews

**OF COUNSEL:**

BURR & FORMAN, LLP
420 20th Street N
Suite 3400

31

Birmingham, AL 35203
Tel: (205) 251-3000
Fax: (205) 458-5400
joseph.letzer@burr.com
india.vincent@burr.com
elizabeth.shirley@burr.com
ellen.mathews@burr.com

## VERIFICATION

STATE OF ALABAMA      )

     )

COUNTY OF JEFFERSON    )

I, *Michael Levine*, hereby certify that the information contained in the foregoing Verified Motion for Preliminary Injunction and Memorandum of Law in Support Thereof is true and correct to the best of my information and belief.

_____

Michael Levine

SWORN TO AND SUBSCRIBED BEFORE ME, this 14ᵗʰ day of August, 2013.

_____

NOTARY PUBLIC

My Commission Expires: _____

MY COMMISSION EXPIRES 12/23/2016

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2013, I filed the foregoing Verified Motion for Preliminary Injunction and Memorandum of Law in Support Thereof on the CM/ECF system, through which the following persons will receive electronic notice of such filing:

Jeff Friedman
Michael J. Douglas
FRIEDMAN DAZZIO ZULANAS & BOWLING, P.C.
3800 Corporate Woods Drive
Post Office Box 43219
Birmingham, AL 35242
Phone: (205) 278-7000
Facsimile: (205) 278-7001


/s Joseph W. Letzer
OF COUNSEL